**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JUDITH FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _______________ |
| | ) | |
| CLARENCE SIMS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1. Judith Fuller ("Plaintiff") was sexually assaulted, harassed, and abused by Clarence Sims, a Missouri Department of Corrections employee at Women's Eastern Reception, Diagnostic, and Correctional Center in Vandalia, Missouri. Sims manipulated his position of authority to physically isolate her while she worked in prison maintenance under his supervision and coerce her into unwanted sexual contact. Repeatedly, Sims penetrated Fuller's mouth with his penis, groped her, and pressured her into feigning interest in him — threatening that if she did not comply, she would lose her "out date" to leave prison. Eventually, in June 2026 another Missouri Department of Corrections employee caught Fuller performing oral sex on Sims in a closet, where Sims had isolated Fuller.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking compensatory damages and punitive damages for violations of her constitutional rights while Defendant acted under color of state law, together with reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Plaintiff also brings claims for battery under Missouri state law, seeking compensatory and punitive damages.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331 because this is a civil action arising under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

4. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because all the events alleged herein occurred within the State of Missouri, and all the parties were residents of the State at the time of the events giving rise to this litigation.

6. Divisional venue is proper in the Northern Division because a substantial part of the events leading to the claims for relief arose in Audrain County. E. D. Mo. L.R. 3-2.07 (A)(2).

**PARTIES**

7. Plaintiff Judith Fuller is an individual who resides in and is a citizen of the State of Missouri. She was incarcerated by the State of Missouri during all relevant periods.

8. Defendant Clarence Sims is an individual who resides in and is a citizen of the State of Missouri. He was employed by the State of Missouri during all relevant periods. Defendant Sims is sued in his individual capacity.

**FACTS**

**SEXUAL MISCONDUCT BY DEFENDANT SIMS**

9. Plaintiff Judith Fuller arrived at the Women's Eastern Reception, Diagnostic, and Correctional Center ("WERDCC") in Vandalia, Missouri in December 2025 and was placed in Reception and Orientation (R&O). She was incarcerated for less than one year.

10. Throughout her incarceration, Judith was committed to working a prison job and earning any income she could to support herself and her children. After working for a couple months in the kitchen, in May 2026, Judith was hired and began working on the building maintenance team at WERDCC.

11. As a maintenance prison worker, Judith's work was supervised by Missouri Department of Corrections maintenance employees, including Specialized Trades Worker Clarence Sims.

12. At the time, Judith was age 33.

13. Upon information and belief, at the time, Mr. Sims was age 72.

14. This is Mr. Sims (center), depicted in a Missouri Department of Corrections Facebook post welcoming him to WERDCC in December 2021:




15. Almost immediately after she began working in maintenance, Mr. Sims began following Judith around the boiler area where she and other female detainees worked.

16. Mr. Sims offered Judith nicotine chew to bribe her into speaking with him. Having lived with drug addictions her entire adult life, being offered nicotine in prison was triggering to Judith.

17. Shortly after she began working in maintenance in May 2025, Mr. Sims sexually assaulted Judith for the first time. He took her by the boilers, where it would be more difficult to be caught by prison video surveillance cameras. He then told Judith to get on her knees, took his penis out of his pants, and directed her to put his penis in her mouth.

18. While sexually assaulting Judith, Mr. Sims threatened her that if she told anyone about this interaction, her "out date" would be taken away and she "wouldn't get her kids back."

19. This threat was particularly terrifying to Judith because she was navigating a custody battle over her children and desperately wanted to return to them. Judith was also scared as she did not know how Mr. Sims knew her out date, given he was a maintenance employee not a corrections officer.

20. For the next week or so after his first sexual assault, Mr. Sims did not make Judith put his penis in her mouth. He explicitly told her he could not do it because other employees were around too often. He continued giving her pouches of nicotine to bribe her into silence.

21. Throughout May, Mr. Sims continued following Judith wherever she went while she was working. This stalking was so obvious that Mr. Sims' prison colleagues, including Kim E. Haynie, told Judith that she assumed Judith and Mr. Sims "were a couple."

22. Having worked for the Missouri Department of Corrections for nearly 20 years, since at least 2007, Ms. Haynie was well-aware that a male employee sexually and/or romantically grooming a female inmate was dangerous, coercive, and in violation of Missouri Department of Corrections policies. Still, she did nothing to intervene or stop Mr. Sims.

23. About one week after he first sexually assaulted Judith, Mr. Sims began sexually assaulting her again.

24. Throughout mid-May to late-June, Mr. Sims repeatedly pressured Judith into joining him in a supply closet, where he would take his penis out of his pants, force her to get on her knees, and put his penis in her mouth. This happened at least 10 times, if not more.

25. While forcing Judith to perform oral sex on him, Mr. Sims often pressured her to engage in vaginal penetrative sex with him. She always told him no, that she did not want to do that and did not consent.

26. In addition to forced oral sex, Mr. Sims would frequently grope Judith when she walked past him, grabbing her buttocks or kissing her without his consent near the boilers. This groping was in the open and could have been caught on video surveillance.

27. During this ongoing period of sexual assault, Mr. Sims continually threatened her that if she told anyone she would lose her out date and lose her children. Mr. Sims also often told Judith that when his wife died, she would move in with him, and that he loved Judith. These comments made Judith deeply uncomfortable.

28. Upon information and belief, Mr. Sims told various other female detainees who worked in maintenance that the Missouri Department of Corrections required him take a Prison Rape Elimination Act ("PREA") class in the past because he had inappropriately engaged with other female detainees before Judith.

29. Upon information and belief, Mr. Sims receiving PREA complaints prior to May 2026 put Missouri Department of Corrections on notice that he posed a threat to female detainees. Yet, he continued working with female detainees in maintenance.

30. Mr. Sims' abuse culminated on June 26, 2026. As he had for the past seven weeks, Mr. Sims pulled Judith into the supply closet and forced her to put his penis in her mouth.

31. While she was being sexually assaulted, another Missouri Department of Corrections maintenance employee, Patrick "Bo" Stinnett, opened the supply closet door. Mr. Stinnett was Mr. Sims' boss.

32. Upon opening the door, Mr. Stinnett saw Judith and stated, "you had his dick in your mouth." Judith was terrified she would get in trouble but knew she could not lie because Mr. Stinnett saw Mr. Sims' penis in her mouth.

33. In response to being caught, Mr. Sims simply stated, "Oh well, you caught me."

34. Immediately after being caught, Judith was brought to the head of maintenance's office, then to a lieutenant's office. Judith was assured that she was not in trouble and that what happened was not okay.

35. Judith was asked to write out what happened. She explained that Mr. Sims would tell her she would go to the hole, lose her out date, or lose her kids if she did not comply with his sexual demands.

36. While speaking with the captain, lieutenant, and sergeant, Judith was crying and shaking, still terrified she would get in trouble.

37. Eventually, Judith was taken to the nurse's office, then transferred to the Hannibal Regional Hospital Emergency Room in Hannibal, Missouri.

38. The Hannibal Regional Hospital Emergency Room documented that Judith was sexually assaulted by a prison employee who orally penetrated her mouth, and that another prison employee witnessed the assault.

39. The Hannibal Regional Hospital Emergency Room documented that Judith was given a buccal swab as part of the medical/forensic rape examination process. Evidence was collected, and it was noted that Judith's demeanor was "tearful."

40. After a few hours at the hospital, Judith returned to the prison the night of June 26, 2026. Judith was not told by any Missouri Department of Corrections employee that Mr. Sims was fired, only to "not worry about him."

**REPORTING AND RESULTING HARM**

41. On June 26, 2026, Judith filed a PREA report against Mr. Sims, documenting penetrative sexual assault.

42. When Judith returned to the prison on June 26, 2026, she immediately felt like an animal at a zoo because everyone was staring at her and gossiping about what happened.

43. Judith confided only in a few trusted friends. She became withdrawn, anxious, and terrified for her safety.

44. Judith's only follow up was a mental health PREA follow up visit on July 9, 2026, with a qualified mental health professional ("QMPH").

45. On July 13, 2026, Judith was released from prison and returned to her family in Missouri.

46. Upon information and belief, Mr. Sims was fired in response to Judith's PREA report. Notably, he had not been fired after previous PREA reports and was thus allowed to continue harming female detainees, like Judith.

47. Judith experienced and continues to experience nightmares, difficulty sleeping, fear of retaliation, anxiety, and emotional distress from being repeatedly sexually assaulted by Mr.

Sims. She will never forget being horrifically violated while living in fear that if she spoke up against this egregious power imbalance, she could remain in prison and lose her children.

**COUNT I - DEFENDANT SIMS' SEXUAL MISCONDUCT VIOLATED THE EIGHTH AMENDMENT**

48. Plaintiff incorporates every prior allegation.

49. Defendant, at all relevant times, acted under color of state law.

50. The acts and conduct of Defendant were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of repeated sexual assault, coercion, threats, and violent bodily intrusion while incarcerated.

51. As a direct and proximate result of Defendant's acts and conduct, Plaintiff suffered serious bodily pain, injury, emotional distress, mental anguish, and other damages.

52. The acts and conduct of Defendant were committed unlawfully, intentionally, and with malice or reckless disregard for Plaintiff's rights.

**COUNT II – BATTERY UNDER MISSOURI STATE LAW**

53. Plaintiff incorporates every prior allegation.

54. Defendant intended to cause harmful and offensive contact with Plaintiff's body.

55. Defendant did cause contact with Plaintiff's body.

56. Defendant's contact with Plaintiff was both harmful and offensive, as she was repeatedly sexually assaulted, groped, and forced to put Defendant's penis in her mouth. Such behavior violates all reasonable senses of personal dignity.

57. Plaintiff never consented to any of Defendant's contact and explicitly expressed that she did not consent to his sexual advances.

58. Defendant's harmful and offensive contact with Plaintiff was unlawful and unprivileged.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount to be determined at trial, punitive damages, reasonable attorneys' fees, costs and disbursements pursuant to law, prejudgment and post-judgment interest, appropriate injunctive relief prohibiting Defendant from engaging in further conduct that violates the constitutional rights of Plaintiff or other incarcerated persons, and such other and further relief as this Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

**KHAZAELI WYRSCH, LLC**

/s/ Leah M. Fessler

Leah M. Fessler, 76824MO
Brendan D. Roediger, 60585MO
James R. Wyrsch, 53197MO
John M. Waldron, 70401MO
Javad M. Khazaeli, 53735MO
911 Washington Avenue, Suite 211
Saint Louis, MO 63101
(314) 288-0777 Phone
(314) 400-7701 Facsimile

*Attorneys for Plaintiff*